# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| LINDA CONATSER and DANNY CONATSER<br>Plaintiffs,<br><br>v.<br><br>FENTRESS COUNTY, TENNESSEE;<br>SHERIFF CHARLES CRAVENS, in his official and individual capacities;<br>CITY OF JAMESTOWN, TENNESSEE;<br>POLICE CHIEF KEN HANCOCK, in his official capacity; and KATIE BROOKS, individually;<br>Defendants. | NO. _____<br>**JURY DEMANDED** |

## COMPLAINT

Plaintiffs, Linda and Danny Conatser, sue Defendants for their causes of action say:

### JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 42 U.S.C. §§ 1983, 1985, 1988, the U.S. Constitution and other federal law. Supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367.

2. All alleged violations of law were committed within the jurisdiction of the United States District Court for the Middle District of Tennessee, Cookeville Division.

### PARTIES

3. Plaintiffs, **Linda and Danny Conatser**, are husband and wife and are citizens and residents of Fentress County, Tennessee, residing in the City of Jamestown, Tennessee.

4. Defendant **Fentress County, Tennessee** is a political subdivision of the State of Tennessee and is sued for the acts of its high-ranking officials (including its Sheriff) and for the

1



acts of its deputy sheriffs pursuant to Tennessee Code Annotated § 8-8-302, the Tennessee Governmental Tort Liability Act, 42 U.S.C. § 1983, the Tennessee Constitution, the United States Constitution and other laws. Fentress County may be served process through its registered agent J. Michael Cross, County Executive, 101 Main Street South, PO Box 1128, Jamestown, TN 38556.

5. Defendant **Charles "Chucky" Cravens** is the Sheriff of Fentress County, Tennessee and is sued in his official and individual capacities. At all times material herein, Sheriff Cravens acted under color of state law. Charles Cravens may be served process at the Fentress County Sheriff's Office, 140 Justice Center Drive, Suite 1, Jamestown, TN 38556.

6. Defendant **City of Jamestown, Tennessee** is a political subdivision of the State of Tennessee and is sued for the acts of its high ranking officials, including its Chief of Police, and for the acts of its police officers pursuant to Tennessee Code Annotated § 8-8-302, Tennessee Governmental Tort Liability Act, 42 U.S.C. § 1983, the Tennessee Constitution, the U.S. Constitution and other laws. City of Jamestown can be served process through its registered agent Darlene Monday Davis, City Mayor, 314 E. Central Avenue, Jamestown, TN 38556.

7. Defendant **Ken Hancock** is the Chief of Police for the City of Jamestown, Tennessee and is sued in his official capacity only. At all times material herein Chief Hancock under color of state law and in conspiracy, concert and jointly with Fentress County Sheriff Charles Cravens. Ken Hancock can be served process through the City of Jamestown Registered agent Darlene Monday Davis, City Mayor, 314 E. Central Avenue, Jamestown, TN 38556.

8. Defendant **Katie Brooks** is a citizen and resident of Fentress County and is sued in her individual capacity. Katie Brooks can be served process at McDonald's, 401 N. Main Street, Jamestown, TN 38556.

2

## FACTS

*Custom, Policy, Practice of Fentress County and of City of Jamestown*

9. Before October 4, 2016, the Fentress County Government and its Sheriff's Department and the City of Jamestown and its police department each adopted and implemented a policy, custom or practice of mutual aid. The Fentress County Sheriff Department could contact the City of Jamestown Police Department for aid with arrests. Likewise, the City of Jamestown Police Department could contact the Fentress County Sheriff Department for aid with arrests.

*The seizure, false arrest, transport to jail, false imprisonment, strip naked search, other violations of civil rights*

10. On or about October 4, 2016, citizen Plaintiff Linda Conatser was at the McDonalds Restaurant in the City of Jamestown, Tennessee located at 401 North Main Street, Jamestown, Tennessee to get something to eat.

11. After she arrived, the Fentress County Sheriff, Defendant Charles "Chucky" Cravens, arrived at the restaurant and came inside.

12. After Defendant Sheriff Cravens recognized Plaintiff Conatser as one of the Conatsers who lived across the street from a female friend of the Sheriff whom he liked to frequently visit, and Ms. Conatser in turn recognized him, the Sheriff angrily ordered Ms. Conatser to leave the restaurant.

13. Plaintiff Conatser responded to the Sheriff in a calm voice that she had every right to be inside McDonald's, a public place, and she did not have to leave.

14. Defendant Sheriff Cravens at one point moved physically towards Ms. Conatser, angrily pointed his finger and the straw he was holding in his hand in Ms. Conaster's face in an

3

intimidating way, causing Ms. Conatser to take a couple of retreat steps, and repeatedly ordered her to "leave now!"

15. When Plaintiff Conatser did not immediately leave, the Sheriff then told her "you wait here" "don't you move" and he went outside where he contacted the Chief of Police for the City of Jamestown by the name of **Ken Hancock**, along with other officers.

16. A few minutes later, Defendant Sheriff **Cravens** and Defendant Police Chief **Hancock** came back through the door into McDonalds. The Sheriff was in plain clothes and a straw hat but the Chief was in his police uniform, and his gun was visibly displayed in its holster.

17. The two of them, **together**, in concert, then used their color of law authority (as Sheriff & as Police Chief) to place Plaintiff Conatser under arrest, took her outside the restaurant and over to a marked City of Jamestown police cruiser, took her purse in the process, initially set it on the hood of the cruiser, put her in the back seat, then they set the purse on the front seat passenger side of the cruiser without searching it at the time of the arrest.

18. They then shut and locked the caged City of Jamestown cruiser door where she continued to be seized and imprisoned.

19. The Defendant police officers never read her Miranda rights at any point of the arrest.

20. The Defendant police officers never told her what conduct she was being arrested for or what crime they were charging her with.

21. While arrested and locked in the back of the police car, all against her will, Plaintiff Conatser thought she would try to see if the window would roll down so she could ask the Police Chief what she was being arrested for.

22. The Police Chief and Sheriff were still standing at the back of the cruiser.

4

23. Plaintiff Conatser tried the window. It rolled down some. She then asked the Police Chief through the window, 'Chief, what am I being arrested for?'

24. Defendant Sheriff Cravens angrily yelled at the Police Officer whose cruiser Plaintiff was in the back seat of and told him to roll up the window and disable it so that she could not roll it down any more.

25. The police officer did as ordered.

26. Neither the Police Chief nor the Sheriff ever answered Ms. Conatser's question, "What am I being arrested for?"

27. The Sheriff thereafter ordered the police officer to transport Plaintiff Conatser to jail.

28. Defendant Chief Hancock and Defendant City of Jamestown furthered the arrest, imprisonment and prosecution of Plaintiff Linda Conatser by authorizing the City of Jamestown police officer to use a City of Jamestown vehicle to imprison her in the locked backseat of cruiser then take her to jail.

29. The Jamestown police officer obeyed the order and transported the arrested and detained Plaintiff to jail against her will and without probable cause.

30. At no point did any Fentress County Sheriff deputy or City of Jamestown police officer tell Plaintiff Linda Conatser what she was being arrested for.

31. When Plaintiff Conatser got to the jail, a female Fentress County deputy corrections officer who was booking-in Ms. Conatser did not tell her what crime she had been arrested for either when Plaintiff asked her as well.

32. Instead, while in the detention center that deputy, who now had Plaintiff's purse, unzipped her purse and searched through it.

5

33. When the deputy came across Plaintiff's wallet inside her purse, the deputy opened it, saw she had money in it, counted the money (thirteen dollars- $13.00), then took ten dollars ($10.00) out of Plaintiff's purse and said to Plaintiff, 'We'll just call this your processing fee.' The deputy then kept the money.

34. The deputy never provided Plaintiff a receipt for the money she took.

35. Linda Conatser was forced to strip naked and allow the jailer to do a cavity search, she thereafter had to shower then put on a jail uniform.

36. Plaintiff Conatser, who had never been arrested before in her life, was humiliated, shamed, embarrassed, became depressed, had difficulty sleeping and was caused severe emotional distress from the arrest, transport in the back of a police car, mug shot, finger printing, strip search, cavity search, followed by being placed in a jail cell and incarcerated.

37. Hours later Plaintiff Danny Conatser, Linda Conatser's husband, was finally able to get a bail bondsman to help get his wife out on bail.

38. The bondsman told Plaintiff he had a copy of the warrants and documents. He told her she had been arrested for "disorderly conduct" and her "bond was set at ten thousand dollars ($10,000.00)".

39. The crime she had been charged with (Disorderly conduct) was a class C misdemeanor.

40. When the bondsman told her she had been charged with disorderly conduct that was the first time anyone had told Plaintiff what crime she had been charged with committing. None of the police officers and sheriff deputies who had participated in her arrest and imprisonment ever told her what crime she had been arrested for. After his wife's arrest, Plaintiff Danny Conatser had also asked one of the jailers what his wife was charged with, and had been told: "We don't know, Chucky has not made up his mind what he's going to charge her with yet".

41. The Sheriff had previously threatened Linda Conatser and her husband (Danny) multiple times that he would arrest them even if he had to make something up to do it. The morning Mr. Conatser was at the Justice Center trying to get his wife out of jail, the Sheriff pulled Danny Conatser to the side and threatened, "I will lock you up too."

42. The bondsman had more than one document in his hands.

43. One of the documents contained a sworn complaint affidavit by the Sheriff. It had the words "Disorderly Conduct" on it. However, where it stated: this is the Tennessee Code Annotated criminal statute that you violated- it was left blank. The case number was left blank and the State control number was left blank.

*Prosecution*

44. The sworn affidavit by the Fentress County Sheriff contained multiple ***malicious and intentionally fraudulent statements*** as well; which he made to cause prosecutors and Judges and others to rely upon and help justify his false arrest of Plaintiff Conatser. Examples of specific fraudulent statements in Defendant Cravens' sworn affidavit were statements stating Plaintiff Conatser got in his face (untrue), was disrupting customers in the dining area (untrue), stating that he "asked" her (untrue) "three" times (untrue) to leave and she just "kept running her mouth"(untrue); and other (untrue) intentional misrepresentations by Defendant Sheriff.

45. The second document the bondsman showed Plaintiff had been issued and signed by a relative of Sheriff Cravens. The relative who had signed that document also reflecting Plaintiff's bond release term at ten thousand dollars ($10,000.00) was named Sue Cravens. She was not a Magistrate and she did not work in the clerk's office.

46. Sue Cravens signature was signed right beside Sheriff Charles Cravens'.

7

47. That bond document, signed by the Cravens, outrageously contained an injunction prohibiting Plaintiff Conatser from being able to go home were she to be released on bond.

48. Plaintiff's home was located on Fowler Road.

49. The Cravens' injunction prohibited Plaintiff from being "present" at any time on Fowler Road.

50. The Cravens' injunction document also contained numerous other outrageous prohibitions which were totally unrelated to Linda Conatser's arrest; including barring and making it illegal for Ms. Conatser to talk to the Sheriff's very good friend who lived across the street from the Conatsers who the Sheriff liked to visit at all hours.

51. Plaintiff was forced under duress to sign the bond release document with all those outrageous special conditions before they would let her out of jail. At one point she started to hesitate signing it, they then motioned and called for the guard to come put her back in her cell, so she went ahead and signed it, desperate to get out of jail.

52. After Plaintiff's husband (citizen Plaintiff Danny Conatser) managed to get $1,000.00 to pay the $10,000.00 bond and bonded her out, they immediately went to hire a lawyer to defend her on the criminal charge and that lawyer warned them that Ms. Conatser could not go home on Fowler Road under the (special condition terms of bond release) injunction order or she would be arrested again.

53. Consequently, Plaintiff Linda Conatser went to the home of a relative on her husband's side of the family (his sister) and Mr. Conatser went home, his wife unable to join him at home. Mr. Conatser is severely disabled with C.O.P.D. and his wife is his primary care giver. Linda Conatser's not being allowed to go home to take care of her disabled husband caused them both severe harm.

54. The next morning, Plaintiff Linda Conatser attended the next step of the prosecution Sheriff Cravens had initiated against her and she attended her arraignment. The Judge immediately struck down the restraining injunction provision prohibiting her from being able to travel on her own street or to be present in her own Fowler Road home. At her arraignment the next prosecution step (her preliminary hearing) was scheduled for October 26, 2016.

### *Katie Brooks' Fraud & Conspiracy*

55. In the interim period leading up to the preliminary hearing, Plaintiff requested complete copies of the video evidence McDonalds had in its possession and control showing the events inside the restaurant from multiple camera angles.

56. However, the Manager (Katie Brooks), individually, in conspiracy and in concert with Fentress County Sheriff Cravens, fraudulently altered, edited and destroyed and/or caused available surveillance video to edit out video evidence showing portions of video where the Sheriff could be seen physically intimidating and threatening Ms. Conatser and eliminated other key video evidence relating to her arrest.

### *Disorderly conduct case thrown out*

57. At the Preliminary hearing the Judge reviewed the arrest and bond documents including the injunction; called them "ridiculous," the state prosecutor (after reviewing the edited surveillance video which still exonerated Plaintiff) then made a *Nolle Prosequi* (NOLLE) motion and the Judge dismissed the charge and dismissed the case against Ms. Conatser; terminating the prosecution of Ms. Conatser in her favor.

58. No grand jury ever found that the Defendants had probable cause to arrest or imprison Ms. Conatser in the first place.

### Deputies appointed by the Sheriff and Police Chief

59. All the deputies who directly participated in the illegal actions against Plaintiff Linda Conatser were appointed by Defendant Fentress County Sheriff Charles Cravens who personally participated as well.

60. All the police officers who directly participated in the illegal actions against Plaintiff Linda Conatser were appointed by/hired by Police Chief Hancock/City of Jamestown. Chief Hancock likewise personally participated in Linda Conatser's arrest and imprisonment.

### Moving force policies, practices or customs causing civil rights violations

61. It was the policy, practice or custom of the City of Jamestown and of Fentress County law enforcement departments to call and involve each other in situations (mutually aid) and use each other's police authority, resources and jurisdiction to arrest and imprison citizens.

62. It was the execution of that policy, practice or custom which was the moving force behind the Fentress County Sheriff being at a McDonalds within the City Limits of Jamestown (City police's jurisdiction) on October 4, 2016 dressed in plain clothes then calling in the Police Chief of the City of Jamestown, who arrived dressed in a police uniform who, then, under color of law and in conspiracy with the Fentress County Sheriff (with the assistance of other City of Jamestown Police Officers and Fentress County Deputies) falsely arrested and falsely imprisoned Plaintiff Linda Conatser which also enabled the malicious prosecution of Linda Conatser that followed.

63. It was also the arbitrary and capricious policy, custom or practice of Fentress County to allow the Sheriff to influence the bond amount if he so chose.

64. It was also the policy, custom or practice of Fentress County to subjectively set bond amounts instead of using a uniform objective process.

65. It was those policies, practices or customs, separately and collectively, which were the moving force behind Fentress County negligently setting Plaintiff's bond at $10,000.00.

66. It was also the policy, custom or practice of Fentress County to allow the Sheriff to set/influence the special condition terms of release for a bond.

67. It was that policy, practice or custom which was the moving force behind the Fentress County Sheriff being able to cause the bond release term prohibiting Plaintiff Conatser from being "present" on Fowler Road, the road her home was on.

68. It was that policy, practice or custom which was the moving force behind the Fentress County Sheriff unreasonably being able to include in the bond release special condition terms that deprived Linda Conatser under color of law of clearly established Constitutional Rights of Plaintiff Conatser including U.S. Constitution First Amendment Rights of freedom of Association. For example, one of the "special conditions" imposed by the Defendants under color of law was "[Linda Conatser] shall not associate with any of the following persons or groups: The Bailey Family, Alley Family and Melton Family of Fowler Road." Another "special condition" imposed was "[Linda Conatser] shall not... telephone, contact or otherwise communicate directly or indirectly with the following persons: The Bailey Family, Alley Family & Melton Family of Fowler Road." (also in violation of her freedom of association rights). Ms. Kim Melton was the Sheriff's special friend.

69. Defendants also deprived Plaintiff Linda Conatser of equal protection of her Constitutional Rights and of Due Process in violation of 42 U.S.C. §§ 1983 & 1985 and the Fourth and Fourteenth Amendments of the U.S. Constitution.

70. Defendants violated Plaintiff's clearly established 4th Amendment Constitutional Right to be free from unreasonable searches and seizures when the Defendants arrested her without

11

probable cause and thereafter illegally searched her purse and never at the time of her arrest or at the scene where they arrested her read her Miranda Rights. Plaintiff further alleges that the fact that her arrest and imprisonment were illegal thereby made the subsequent search of her purse illegal regardless of when or where the search thereafter took place.

71. Further, the Defendants making Plaintiff Linda Conatser strip naked then searching her person also violated her federal and state rights against unreasonable searches as well as constituted invasion of privacy.

72. As a direct and proximate result of all of the foregoing actions by the Defendants, the Plaintiffs suffered economic damages as well as pain, suffering, humiliation, embarrassment, depression, severe emotional distress and other harm. Moreover, Plaintiff Linda Conatser has had to obtain professional counseling to help her cope with her severe emotional distress from the Defendants' outrageous violations of her.

73. At all times herein material Defendants Cravens, Hancock and the Sheriff deputies of Fentress County and the police officers of the City of Jamestown were acting under the color of state law through civil conspiracy with one another and with Defendants Fentress County and the City of Jamestown, Tennessee.

74. As a proximate result of the wrongful acts of Defendants, Plaintiffs were denied federal and state constitutional rights, and sustained mental and emotional distress, fear, embarrassment, shame, mental anguish, pain and suffering, loss of consortium and other harm.

75. The aforementioned facts are incorporated into each of the following causes of action as if fully restated therein:

## CLAIMS

*First Claim: False Arrest (Defendants Fentress County, City of Jamestown, Sheriff Cravens and Chief Hancock)*

76. On or about October 4, 2016 Defendants Cravens and Hancock and deputies from the Fentress County Sheriff's Department and police officers from the City of Jamestown police department, in joint concert with and at the direction of Fentress County Sheriff Charles "Chucky" Cravens, falsely arrested Plaintiff, for which they are liable under federal and state law.

*Second Claim: False Imprisonment (Defendants Fentress County, City of Jamestown, Sheriff Cravens and Chief Hancock)*

77. On or about October 4, 2016 Defendants Cravens and Hancock and deputies from the Fentress County Sheriff's Department and police officers from the City of Jamestown police department, in joint concert with and at the direction of Fentress County Sheriff Charles "Chucky" Cravens, falsely arrested Plaintiff, for which they are liable under federal and state law.

*Third Claim: Civil Conspiracy and 42 U.S.C. § 1985(3) Conspiracy (All Defendants)*

78. In engaging in the unlawful conduct set forth in this Complaint, Defendants (all) were acting pursuant to a common design, scheme or plan to accomplish an unlawful purpose.

79. Alternatively, in engaging in the conduct set forth in this Complaint, Defendants were acting pursuant to a common design, scheme or plan to accomplish a lawful purpose by unlawful means.

80. Defendants Cravens and Hancock (and their participating officers) each committed overt acts in furtherance of said conspiracy, as further set forth in this Complaint.

13

81. Defendants Fentress County and City of Jamestown are jointly and severally liable to Plaintiffs for their damages, as further set forth in this Complaint.

***Fourth Claim: Tenn. Code Ann. § 8-8-302 (Defendants Fentress County and City of Jamestown)***

82. On or about October 4, 2016, Defendant Cravens did the wrongs complained of under color of law and by virtue of his office as the Sheriff of Fentress County, Tennessee and his deputies by virtue of their office as deputy sheriffs for Fentress County, Tennessee.

83. Defendant Fentress County, Tennessee is liable for the acts of those Defendants pursuant to Tenn. Code Ann. § 8-8-302.

84. Further, on or about October 4, 2016 Defendant Hancock, the Chief of Police for the City of Jamestown, Tennessee along with police officers for the City of Jamestown, Tennessee; all, in conspiracy with Defendant Sheriff Cravens, did the wrongs complained of under color of law and by virtue of law enforcement authority from the City of Jamestown, Tennessee, and its mutual aid policy.

85. Defendant City of Jamestown, Tennessee is liable for the acts of those employee Defendants pursuant to Tennessee Code Annotated § 8-8-302.

***Fifth Claim: 42 U.S.C. § 1983 (All Defendants)***

86. Defendants Cravens and Hancock, separately and together in concert and under color of law, unreasonably violated the civil rights of Plaintiff Linda Conatser because she was falsely arrested, falsely imprisoned and maliciously prosecuted without probable cause and without just cause in violation of the clearly established Fourth and Fourteenth Amendments to the US Constitution; Article 7 of the Tennessee Constitution; Article 1 Section 7 of the Tennessee Constitution, and the common law of the State of Tennessee.

87. The arrest, strip search, imprisonment and prosecution were unlawful, unconstitutional, humiliating, emotionally painful to Ms. Conatser and violated her constitutional rights under, *inter alia*, the Fourth Amendment and Title 42 U.S.C. § 1983 as well as Tennessee State Law.

88. Defendants Fentress County and City of Jamestown, Tennessee each had a custom, policy or practice of authorizing its law enforcement officers to participate, assist and aid the arrest and imprisonment of citizens if called upon to do so by the other.

89. It was the execution of that mutual aid policy, custom or practice of Fentress County, Tennessee and of the City of Jamestown, Tennessee, which was the moving force behind Plaintiff Linda Conatser outrageously being falsely arrested, illegally strip searched, falsely imprisoned and maliciously prosecuted starting on or about October 4, 2016.

90. The seizure, search and prosecution of Plaintiff Linda Conatser were unconstitutional, unreasonable and caused injury to Linda Conatser and violations of her Fourth and Fourteenth Amendment rights under Title 42 U.S.C. § 1983. All the listed Defendants are jointly and severally responsible for those violations and injuries by actual participation or through conspiracy under the requirements of Titles 42 U.S.C. § 1983 and 1985(3).

91. Alternatively, Defendants Fentress County and City of Jamestown were deliberately indifferent to the violations of Plaintiff's Constitutional Rights caused by the negligent execution of their mutual aid policy, practice and custom.

***Sixth Claim: Malicious Prosecution (Defendants Fentress County, City of Jamestown, Sheriff Cravens and Chief Hancock)***

92. Defendant Fentress County Sheriff Cravens maliciously (or alternatively, negligently) authored a sworn complaint that caused the arrest, imprisonment and prosecution of Plaintiff Linda Conatser without probable cause. Arraignment and preliminary hearing judicial

15

proceedings resulted which terminated in Plaintiff's favor when the case was dismissed. Accordingly, Defendants Fentress County and Fentress County Sheriff Cravens are liable for malicious prosecution. Defendant City of Jamestown and Chief Hancock are jointly liable through conspiracy/negligence.

### Seventh Claim: Negligent Infliction of Emotional Distress (All Defendants)

93. Defendants had a duty to not deprive Plaintiff Linda Conatser of her clearly established Fourth Amendment rights without probable cause. Defendants unreasonably breached that duty causing Plaintiff Linda Conatser humiliation, embarrassment, severe mental and emotional distress and other harm. Defendants conduct was outrageous and exceeded the bonds of decency in a civilized society. Further, as a direct and proximate result Plaintiff Danny Conatser suffered severe physical and emotional harm.

94. All Defendants are liable to the Plaintiffs for those acts in violation of Tennessee State Law.

### Eighth Claim: Tennessee Governmental Tort Liability Act (Defendants Fentress County and City of Jamestown

95. Defendant Fentress County and City of Jamestown negligently hired, trained, supervised or retrained the deputies and police officers who participated in the arrest and imprisonment of Plaintiff Linda Conatser.

96. Defendants Fentress County and City of Jamestown's policies of unqualified mutual aid and assist negligently caused the deprivation of Plaintiff Linda Conatser's constitutional rights; without probable cause.

97. Defendants Fentress County and City of Jamestown are liable to the Plaintiffs under the Tennessee Governmental Tort Liability Act.

98. Alternatively, Defendants Fentress County and the City of Jamestown were deliberately indifferent to citizens' legal rights being deprived through the negligent execution of Defendants' mutual aid policy.

***Ninth Claim: Invasion of Privacy by Intrusion (Defendants Sheriff Cravens and Fentress County)***

99. Defendants Cravens and Fentress County deliberately and unreasonably caused the humiliating highly offensive naked cavity search of Plaintiff Linda Conatser's person to which she had an expectation of privacy. That strip search constituted invasion of privacy by intrusion for which those Defendants are liable to Plaintiff Linda Conatser.

***Tenth Claim: Fraud and Conspiracy (Defendants Sheriff Cravens and Katie Brooks)***

100. Defendant Brooks and Cravens intentionally, fraudulently and maliciously altered/destroyed video evidence upon information and belief. They altered video showing the conduct of Sheriff Cravens and Linda Conatser inside the McDonalds; including by editing out aggressive conduct by Sheriff Cravens to Linda Conatser. They also edited out all video showing the arrest and imprisonment, police camera and other incidents which occurred outside in the McDonalds parking lot

**PRAYER FOR RELIEF**

101. WHEREFORE, Plaintiffs pray that they are granted the following relief:

    a. Enter judgment against Defendants and declare the actions of Defendants violate Federal and State law;

    b. Plaintiffs demand judgment against Defendants, jointly and severally, in a sum within the jurisdictional limits of this Court, together with the costs of suit, attorney's

17

Case 2:17-cv-00023    Document 1    Filed 04/12/17    Page 17 of 20 PageID #: 86

fees pursuant to 42 U.S.C. § 1988, injunctive relief, and such for the relief as the Court deems proper.

 c. Order Defendants Charles Cravens and Katie Brooks to pay Plaintiff Linda Conatser punitive damages in an amount determined fair by a jury.

 d. Order Defendants to pay all costs, reasonable attorney fees and all further relief Plaintiffs are entitled to under law and/or as the Court deems just and proper.

102. Plaintiffs request a jury trial in this case.

        BY: /s/ George T. Underwood, Jr.
           GEORGE T. UNDERWOOD, Jr., Esquire
           Attorney for Linda and Danny Conatser
           Underwood Law Office
           Twelve Oaks
           5401 Kingston Pike, Suite 520B
           Knoxville, TN 37919
           (865) 450-9820 (phone)
           (865) 450-9822 (fax)

# OATH

STATE OF TENNESSEE   )
COUNTY OF KNOX        )

      Linda Conatser, having been duly sworn according to the law, makes oath that he has read the foregoing **Complaint** and that the facts set forth therein are true to the best of his knowledge, information and belief, and are not made out of levity or by collusion with the Defendant, but in sincerity and truth for the causes set forth in said **Complaint**.


*Linda Conatser*
Linda Conatser


Sworn to and subscribed to before me this 27th day of March, 2017.


*Allen J. Wright*
NOTARY PUBLIC
My Commission expires: 2-23-21

18

# OATH

STATE OF TENNESSEE  )
COUNTY OF KNOX  )

      Danny Conatser, having been duly sworn according to the law, makes oath that he has read the foregoing **Complaint** and that the facts set forth therein are true to the best of his knowledge, information and belief, and are not made out of levity or by collusion with the Defendant, but in sincerity and truth for the causes set forth in said **Complaint**.

_Danny Conatser_
Danny Conatser

Sworn to and subscribed to before me this 27th day of March, 2017.

_Allen Jd Wright_
NOTARY PUBLIC
My Commission expires: 2-23-21