# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# COOKEVILLE DIVISION

| | |
|---|---|
| LINDA CONATSER and DANNY CONATSER, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 2:17-cv-00023 ) CHIEF JUDGE CRENSHAW |
| FENTRESS COUNTY, TENNESSEE, et al., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

After Fentress County, Tennessee, Sheriff Charles Cravens detained Linda Conatser, Jamestown, Tennessee, Police Detective Jeff Hancock and Chief Ken Hancock (collectively, the "Jamestown officials") walked Conatser to a Fentress County Sheriff vehicle to transport her to the jail. Conatser sued the Jamestown officials and the City of Jamestown, Tennessee (collectively, the "Jamestown Defendants") for the incident, alleging false arrest and false imprisonment, in violation of 42 U.S.C. § 1983; civil conspiracy, in violation of 42 U.S.C. § 1985(3); and state law claims.[1] (Doc. No. 52.) Before the Court is the Jamestown Defendants' Motion for Summary Judgment. (Doc. No. 56.) For the following reasons, the Motion is granted.

---
[1] All claims against Cravens and the other Fentress County officials have been settled and dismissed. (Doc. Nos. 48-49.)

I. Undisputed Facts[2]

On October 4, 2016, Linda Conatser went to McDonald's in Jamestown, Tennessee, to have breakfast. (Doc. No. 62-6 at 4.) After breakfast, she went to the counter to ask her grandson-in-law, a chef at the McDonald's, if he wanted a ride home. (Id. at 5.) When Linda Conatser turned to leave the conversation, she saw Cravens glaring at her. (Id.) She knew Cravens was angry about a dispute she had with her neighbor, Cravens' friend, on Fourth of July. She approached Cravens and told him that her husband Danny Conatser had told her that Cravens wanted to talk with her. (Id.)

The conversation escalated and at some point Cravens told Linda Conatser to "get out." (Id. at 6.) Linda Conatser countered that she was not going to "get out" because of her (apparently mistaken) belief that McDonald's was in the city, rather than the county, so the Sheriff did not have jurisdiction. (Id.) Cravens told Linda Conatser that if she did not leave, he was going to "lock [her] up." (Id.) Linda Conatser retorted that Cravens likes to "lock people up," at which point Cravens told her, "You stay right here. Don't you go anywhere. Don't you move. Do you hear me? Don't go anywhere." (Id.)

The video shows that Linda Conatser complied with Cravens' demands and stayed in the restaurant. (Doc. No. 62-2.) Cravens went outside to call for backup, and Linda Conatser told other patrons that "it look[ed] like [she was] going to get arrested." (Doc. No. 62-6 at 6.) Her grandson then came up to her, and she told him, "I think I'm fixing to get arrested." (Id. at 8.) Soon, Linda Conatser's granddaughter arrived, to which Linda Conatser said, "I think I'm going to get

---

[2] Plaintiffs' counsel did not comply with Local Rule 56.01(c) in responding to the Jamestown Defendants' Statement of Undisputed Facts. Specifically, counsel did not make the response "on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant. In any case, the non-movant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant." Nonetheless, although it is difficult to discern which of the Jamestown Defendants' facts the Conatsers dispute, given the limited record the Court can look to the cited portions of the record to find which facts are in the light most favorable to the Conatsers.

arrested." (Id. at 9.) Linda Conatser testified that at this point, she did not feel like she could leave the restaurant or she would be charged with "alluding arrest." (Id.)

Within a few minutes, the Jamestown officials arrived. (Id. at 10.) The Jamestown Police Department came in aid of the Fentress County Sheriff's Department because the two departments had a verbal "Mutual Aid Agreement," under which they would help each other in the event one calls for backup. (Doc. No. 62-10.) Cravens told Ken Hancock that Linda Conatser was belligerent and in his face and refused to walk away after being asked three times. Ken Hancock signaled for Linda Conatser to come with him and she complied. (Doc. No. 62-6 at 10.) Ken Hancock asked her to get into a Fentress County Sheriff's Department vehicle and she complied. (Id. at 11.) A Sheriff's Deputy then transported her to jail. (Id.) The Jamestown officials did not handcuff Linda Conatser or use any force on her. (Id. at 13.)

II.   Analysis

The Jamestown officials move for summary judgment on the basis of qualified immunity. The Supreme Court set forth the standard for analyzing whether a government official is entitled to qualified immunity:

> In [Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001)], this Court mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right. 533 U.S., at 201, 121 S.Ct. 2151. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Ibid. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right. Anderson, at 640, 107 S.Ct. 3034.

Pearson v. Callahan, 555 U.S. 223, 232 (2009).

In evaluating if a defendant is entitled to qualified immunity, the Court must adopt "the plaintiff's version of the facts . . . unless the plaintiff's version is 'blatantly contradicted by the

3

record, so that no reasonable jury could believe it.'" Soudemire v. Mich. Dept. of Corr., 705 F.3d 560, 565 (6th Cir. 2013) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). When, as here, there is a video recording of the incident, the Court cannot construe the facts in a light that "is wholly unsupportable—in the view of any reasonable jury—by the video recording." Shreve v. Franklin Cty., Ohio, 743 F.3d 126, 132 (6th Cir. 2014) (quoting Marvin v. City of Taylor, 509 F.3d 234, 239 (6th Cir. 2007)). The plaintiff "has the burden to prove that a right is clearly established." Everson v. Leis, 556 F.3d 484, 494 (6th Cir. 2009) (citing Barrett v. Steubenville City Sch., 388 F.3d 967, 970 (6th Cir. 2004)). When, on summary judgment, "the legal question of immunity is completely dependent on which view of the disputed facts is accepted by the jury," then summary judgment must be denied. Humphrey v. Mabry, 482 F.3d 840, 846 (6th Cir. 2007) (quoting Brandenburg v. Cureton, 882 F.2d 211, 216 (6th Cir. 1989)).

A. False Arrest and False Imprisonment

The Conatsers bring false arrest and false imprisonment claims against the Jamestown defendants. False arrest is a type of false imprisonment claim, and the two are typically analyzed together. Wallace v. Kato, 549 U.S. 384, 388 (2007); see also Taylor v. Terry, No. 3:15-cv-794, 2015 WL 5008782, at *2 (M.D. Tenn. Aug. 19, 2015) (noting that false arrest and false imprisonment cases are analyzed together) (citing references omitted). The Conatsers argue that the Jamestown Defendants violated Linda Conatser's Fourth Amendment right "to be free from unreasonable seizure (without probable cause seizure)." (Doc. No. 62 at 15 (citing Miller v. Maddox, 866 F.3d 386 (6th Cir. 2017))). The citing reference, Miller v. Maddox, dealt solely with a malicious prosecution claim, which is not at issue in this case.[3] 866 F.3d at 396. Rather, this case involves the clearly established right "that an arrest without probable cause violates the Fourth

---

[3] The Conatsers alleged malicious prosecution only against Cravens and Fentress County. (Doc. No. 52 at 18-19.)

4

Amendment." Thacker v. City of Columbus, 328 F.3d 244, 260 (6th Cir. 2003) (quoting Donovan v. Thames, 105 F.3d 291, 297-98 (6th Cir. 1997)). The Conatsers agree that Cravens ordered Linda Conatser not to leave the McDonald's, but contend that she was not actually arrested until Ken Hancock escorted her to the county vehicle. (Doc. No. 62 at 12.)

The undisputed facts viewed in the light most favorable to the Conatsers and consistent with the video evidence show that Cravens arrested Linda Conatser. "Interactions between police and civilians are divided into three categories: (1) encounters, (2) investigative detentions, and (3) arrests." 5 Am. Jur. 2d Arrest § 1 n.2 (2d ed. May 2018) (citing reference omitted). There "is no bright line rule differentiating an arrest from a detention supported by less than probable cause." Posr v. Doherty, 944 F.2d 91, 98 (2d Cir. 1991) (citing Florida v. Royer, 460 U.S. 491, 506 (1983)). "There has been an arrest if . . . a reasonable person would conclude that he was not free to leave after brief questioning." Stevens v. Rose, 298 F.3d 880, 883 (9th Cir. 2002) (quoting United States v. Del Vizo, 918 F.2d 821, 824 (9th Cir. 1990)). "Whether a seizure is an arrest or merely an investigatory detention [ ] depends on the reasonableness of the level of intrusion under the totality of the circumstances." Posr, 944 F.2d at 98 (citing United States v. Martinez, 808 F.2d 1050, 1053 (5th Cir. 1987)); see also United States v. Pacheco-Alvarez, 227 F. Supp. 3d 863, 887 (S.D. Ohio 2016) (discussing the factors to determine whether an investigatory stop turns into an arrest) (citing Brown v. Lewis, 779 F.3d 401, 414 (6th Cir. 2015)). "An arrest need not be formal; it may occur even if the formal words of arrest have not been spoken provided that the subject is restrained and his freedom of movement is restricted." Id. (citing United States v. Levy, 731 F.2d 997, 1000 (2d Cir. 1984)). "[T]o constitute an 'arrest' all that is required 'is some act by the officer which indicates his intention to detain or to take a person into custody, thereby subjecting that person to

the actual control and will of the officer.'" United States v. Randle, 67 F. Supp. 2d 734, 738 (E.D. Mich. 1999) (quoting Commonwealth of Pennsylvania v. Brown, 326 A.2d 904 (1974)).

Here, Cravens was not investigating Linda Conatser for anything or questioning her—he told her not to leave for the purpose of arresting her. Linda Conatser did not believe she was free to leave, and neither would any reasonable person. Under the totality of the circumstances, no reasonable jury could conclude that when Cravens told Linda Conatser not to leave the restaurant and then called for backup for the purposes of transporting her to jail, he was subjecting her to an "encounter" or an "investigative detention." Linda Conatser had been arrested as a matter of law.

Because Cravens arrested Linda Conatser, the Conatsers cannot establish a false arrest claim against the Jamestown officials. To prevail on a false arrest claim, Linda Conatser would have to prove that the "arresting officer lacked probable cause to arrest the plaintiff." Sykes v. Anderson, 625 F.3d 294, 308 (6th Cir. 2010) (quoting Voyticky v. Vill. Of Timberlake, Oh., 412 F.3d 669, 677 (6th Cir. 2005)). Here, Cravens was the arresting officer, not the Jamestown officials. See Hall v. Metro. Gov't of Nashville and Davidson Cty., No. 3:17-cv-1268. 2018 WL 305751, at *13 (M.D. Tenn. Jan. 5, 2018) (Trauger, J.) (holding that when another law enforcement officer arrests the plaintiff, a subsequent officer who takes custody of the plaintiff "is generally entitled to rely upon a fellow officer's findings") (quoting Sutherland v. Mizer, 625 F. Supp. 2d 492, 500 (E.D. Mich. 2008)). Instead, the Jamestown officials' sole role in the illegal arrest of Linda Conatser was escorting her to the police car. She had already been seized—indeed, arrested—by the county, and was in county custody at the time. See Brown v. City of Huntsville, Ala., 608 F.3d 724, 737 (11th Cir. 2010) (affirming dismissal of false arrest claim against officer who assisted suspect into a police car because that officer did not make the decision to arrest, but instead was only following orders). The Conatsers do not cite any case that would put a reasonable

officer in the Jamestown officials' position on notice that he or she might be violating the Conatsers' constitutional rights. See Baynes v. Cleland, 799 F.3d 600, 610-11 (6th Cir. 2015) (holding that the "salient question . . . is whether the state of the law [at the time of the action giving rise to the claim] gave respondents fair warning that their alleged treatment of [the plaintiff] was unconstitutional") (quoting Hope v. Pelzer, 536 U.S. 730, 741 (2002)). The Jamestown officials are entitled to qualified immunity on the false arrest claim.

The City of Jamestown also cannot be liable for false arrest because the Jamestown officials did not commit an underlying constitutional violation. Municipalities are "persons" for the purposes of § 1983 liability. Monell v. Dep't of Social Servs. of the City of New York, 436 U.S. 658 (1978). However, municipalities cannot be held liable pursuant to § 1983 under a theory of respondeat superior. Id. at 691; Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997). Instead, "a plaintiff seeking to impose liability on a municipality under § 1983 [is required] to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Brown, 520 U.S. at 403. The plaintiff must demonstrate that, "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Id. at 404. "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id.

Here, because Cravens was the person who violated Linda Conatser's rights and not the Jamestown officials, the City of Jamestown cannot be liable for false arrest. Even if the Court found that the Jamestown officials committed a constitutional violation, the Court would still dismiss the municipal liability claim against the City of Jamestown because its policy did not violate the Conatsers' constitutional rights. The Conatsers argue that the City of Jamestown has a policy: the Mutual Aid Agreement. However, the existence of a policy that one person manipulates

to injure another's constitutional rights is not sufficient. See Doe v. Claiborne Cty., Tenn. By and Through Claiborne Cty. Bd. of Educ., 103 F.3d 495, 507 (6th Cir. 1996) (holding that the plaintiff must "show a direct causal link between the [policy] and the constitutional deprivation; that is, she must 'show that the particular injury was incurred *because* of the execution of that policy'") (emphasis in original) (quoting Garner v. Memphis Police Dep't, 8 F.3d 358, 364 (6th Cir. 1993)). In other words, the policy itself must cause the deprivation of federal rights. Brown, 520 U.S. at 403. Here, Jamestown officials and Fentress County officials generally assisted each other did not violate Linda Conatser's rights, only Cravens did by arresting Linda Conatser. This would have occurred whether Fentress County or Jamestown officials arrived at the McDonald's in response to Cravens' call. Accordingly, the Mutual Aid Agreement did not cause the constitutional violation against Linda Conatser.

B. Civil Conspiracy

The Jamestown officials also move for summary judgment on the Conatsers' § 1985(3) civil conspiracy claim. A claim brought under 42 U.S.C. § 1985(3) "prohibits 'two or more persons [from] conspir[ing]' to interfere with state judicial proceedings 'with intent to deny to any citizen the equal protection of the laws'" and requires "some racial, or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Alexander v. Rosen, 804 F.3d 1203, 1207-08 (6th Cir. 2015) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)). There is no allegation or evidence of racial animus or other class-based invidious discriminatory animus behind any of the alleged-conspirators' actions, so the Jamestown Defendants are entitled to summary judgment on this claim.

C. State Law Claims

The Court may decline to exercise supplemental jurisdiction over the state law claims if it dismisses "all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" Gamel v. City of Cincinnati, 625 F.3d 949, 951 (6th Cir. 2010) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . ." Id. at 952 (quoting Musson Theatrical, Inc. v. Fed. Exp. Corp., 89 F.3d 1244, 1254-55 (6th Cir. 1996)). After weighing the relevant factors, the Court does not see any reason to depart from general rule. Accordingly, the Court declines to retain supplemental jurisdiction over the state law claims.

The Court will enter an appropriate order.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE